U.S. EQUAL EMPLOYMENT OPPORTUNITY            CIVIL ACTION
COMMISSION

VERSUS                                       NO. 17-9362

GULF LOGISTICS OPERATING, INC.               SECTION "B"(3)

## ORDER AND REASONS

Defendant Gulf Logistics Operating, Inc. ("Gulf Logistics") filed the instant motion for summary judgment. Rec. Doc. 49. Plaintiff timely filed a response in opposition. Rec. Doc. 55. Defendant then sought, and was granted, leave to file a reply. Rec. Doc. 61. For the reasons discussed below,

**IT IS ORDERED** that the motion for summary judgment is **DENIED.**

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This action arises under Title I of the Americans with Disabilities Act ("ADA") and Title I of the Civil Rights Act of 1991. Rec. Doc. 2 at 1. Plaintiff alleges that defendant discriminated against charging party Jason Gunderson when he was discharged because he was perceived to be disabled and a safety threat to himself and to others because of his situational depression. Id. Additionally, plaintiff avers that defendant unlawfully discriminated against Mr. Gunderson when he was forced to obtain a medical release before he could return to work because he requested a referral to the Employee Assistance Program ("EAP"),

as this is a prohibited medical inquiry/exam under the ADA. Id. at 1-2.

This Court previously denied defendant's motion to dismiss pursuant to FRCP 12(b)(6), finding that defendant was seeking dismissal of claims that were not actually pleaded in the complaint. Rec. Doc. 23. The Court held that plaintiff did not allege violations of 42 U.S.C. § 120121(A) & (B), but rather only alleged violations of 42 U.S.C. § 12102(3)(A) and 12112(d)(4)(A). Id. at 4-6.

Defendant filed the instant motion for summary judgment, arguing that there is no evidence of unlawful discrimination against Mr. Gunderson because of an actual disability or being "regarded as" disabled, any alleged physical impairment was minor or transitory and did not qualify as a disability, and there is no evidence the medical examinations of Mr. Gunderson were improperly conducted. Rec. Doc. 49. Plaintiff filed a response in opposition arguing that summary judgment should not be granted because plaintiff can establish a prima facie case of discrimination under the burden-shifting framework of the ADA, defendant's actions were a pretext for disability discrimination, and forcing Mr. Gunderson to obtain medical clearance was a prohibited medical inquiry/exam under the ADA. Rec. Doc. 55. In its reply, defendant asserts that it has presented a legitimate, non-discriminatory reason for termination. Rec. Doc. 61.

## THE PARTIES' CONTENTIONS

Defendant asserts that Mr. Gunderson denied having any diagnosis from his treating physician or having a diagnosis of depression and testified that he was able to perform work duties correctly. Id. at 4. Defendant states there was no "substantial limitation" on performing a major life activity and therefore no "actual" or "record of" disability. Id. at 5. Defendant also argues that plaintiff cannot show that Mr. Gunderson was "regarded as" disabled and that defendant has articulated a legitimate non-discriminatory reason for Mr. Gunderson's termination, specifically failing to perform an engine check and an overall decline in the quality of his work. Id. at 6. Defendant offers in support the testimony of Captains deBouchel and Bourque, who assessed Mr. Gunderson's job performance. Id at 6-7. Defendant argues that plaintiff has not offered any evidence to refute the Captains' testimony. Id. at 7. Because Mr. Gunderson's alleged disability was transitory, lasting only about two months, defendant avers it does not qualify as a disability under the statute. Id. at 8-9. Finally, defendant asserts that the return to work examination of Mr. Gunderson was proper because of the significant weight the Coast Guard places on compliance with safety standards, and that it was conducted in accordance with Coast Guard regulations. Id. at 9-10.

Plaintiff argues that summary judgment is not proper because there is a genuine dispute of material fact. Rec. Doc. 55. Plaintiff asserts it can establish a prima facie case of discrimination by showing that Mr. Gunderson was "regarded as" disabled, without having to provide evidence to show he was actually disabled. Id. at 12. Plaintiff states that the ADA was amended in 2008 and now covers individuals discriminated against because they are "regarded as having an actual or perceived physical or mental impairment *whether or not* the impairment limits or is perceived to limit a major life activity." Id. at 13. (citing *Cannon v. Jacobs Field Services North America, Inc.*, 813 F. 3d 586, 591 (5th Cir.2016) (citing 42 U.S.C. §§12102(1) (C), 3(1) (A))). Plaintiff states that Mr. Gunderson did not fail to do his duties and was cleared to work without any restrictions, yet defendant still perceived him to have mental and emotional issues affecting his job performance due to bias and stereotypes. Id. at 16-17. Plaintiff notes that prior to seeking EAP assistance, Mr. Gunderson had not been counseled or disciplined for failing to perform his duties but was told that he could not return to work afterwards without receiving a medical release "because of safety concerns." Id. at 16. Plaintiff also states that it suspects defendant obtained documentation from the Captains to justify Mr. Gunderson's termination. Id. at 16. Plaintiff avers that it is not enough for defendant to simply state that it did not perceive Mr.

Gunderson to be disabled when seeking summary judgement, and that defendant's behavior towards Gunderson demonstrates he was perceived to be a threat and unable to work because of his situational depression. Id. at 17. Plaintiff further asserts that defendant cannot demonstrate with objective evidence that Mr. Gunderson's impairment was both transitory and minor because situational depression, or adjustment disorder, can be a recurrent continuous condition that lasts longer than six months depending on the triggering situation, which is the case for Mr. Gunderson. Id. at 18. Furthermore, plaintiff asserts that even if defendant alleges the condition was transitory, it cannot assert that Mr. Gunderson's condition was minor if defendant determined that his continued presence at the job site was a safety concern and precluded his ability to work. Id. Additionally, plaintiff asserts that defendant cannot show that it made any efforts to determine whether this condition was transitory and minor as it did not seek assistance from Ann Ledet or Dr. McGraw to determine the extent of Mr. Gunderson's condition and failed to obtain objective evidence or documentation to support this defense. Id. at 18-19. Plaintiff asserts that whether Mr. Gunderson was qualified to perform the essential function of his job is a material fact in dispute as defendant's supporting evidence contains documents that were created after Mr. Gunderson's last day of work and not while he was employed. Id. at 19. Plaintiff avers that defendant's

supporting documents do not contain evidence of Mr. Gunderson's failure to perform his duties but rather reflect that the Captains were concerned because he was emotional, and their unfounded fears led to his termination. Id. at 19-20. Plaintiff asserts that it should be left to the trier of fact to weigh witness testimony and determine who to believe. Id. at 21. Additionally, plaintiff asserts that defendant cannot establish a direct threat defense because under the ADA the defendant is required to make an individualized assessment to determine Mr. Gunderson poses a significant risk to the health and safety of himself and others which cannot be eliminated by reasonable accommodation. Id. Defendant did not make an independent assessment to make a fact intensive determination, and furthermore failed to make any effort to accommodate Mr. Gunderson. Id. at 22. If the Court finds that defendant met its burden of proving a legitimate non-discriminatory reason for Mr. Gunderson's discharge, plaintiff asserts that it has provided evidence to show that defendant's actions were a pretext to terminate Mr. Gunderson on the basis of his disability. Id. at 24. Plaintiff asserts that Mr. Gunderson was not given his official termination papers until two weeks after he was actually terminated in order to allow defendant to secure the documents it submitted in support of its reason for discharging Mr. Gunderson. Id. at 25. Also, plaintiff asserts the two additional documents defendant submitted that appear to support

its direct threat defense were not received during the investigation and were drafted three years after the termination and a month after the EEOC issued its LOD. Id. Finally, plaintiff asserts that forcing Mr. Gunderson to obtain a medical clearance after he asked for an EAP referral is a prohibited medical inquiry/exam under the ADA. Id. at 26. Plaintiff states that a blanket requirement that all employees who seek an EAP referral must obtain a return to work examination is a prohibited medical inquiry where the defendant has failed to establish it is job-related and consistent with business necessity. Id. Plaintiff argues that defendant has failed to present evidence to show this and therefore it is a material fact in dispute and summary judgment is not proper. Id. at 27.

## LAW AND ANALYSIS

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). When the movant bears the burden of proof, it must "demonstrate the

absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. But "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). When the movant meets its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). All reasonable inferences must be drawn in favor of the nonmovant, but "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *See Sec. & Exch. Comm'n v. Arcturus Corp.*, 912 F.3d 786, 792 (5th Cir. 2019).

According to the ADA, no covered employer shall "discriminate against a qualified individual with a disability because of the disability of such an individual in regard to...discharge of employees." 42 U.S.C. § 12112(a) (2009). The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities . . .; (B) a record of such impairment; or (C) being regarded as having such an impairment...." 42 U.S.C. § 12102(1). In this case, plaintiff alleges Mr. Gunderson was discriminated against under subsection (C): because he was "regarded as having such an impairment," a violation of 42 U.S.C. §12102(3). In 2008, Congress passed the ADA Amendments Act

("ADAAA") to "make it easier for people with disabilities to obtain protection under the ADA." 29 C.F.R. § 1630.1(c)(4). "A principal way in which Congress accomplished that goal was to broaden the definition of disability." *Cannon*, 813 F.3d at 590 (5th Cir.2016). Specifically, Congress noted that "the Supreme Court and EEOC had interpreted the "substantially limits" standard to be a more demanding one than Congress had intended." *Cannon*, Inc., 813 F.3d at 590 (5th Cir. 2016); 42 U.S.C. § 12101 note (ADA Amendments Act of 2008) (expressly disapproving of prior Supreme Court decisions and EEOC interpretations of the "substantially limits" standard); *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir.2013) (stating that the ADAAA was passed to correct the perceived misconception that the "substantially limits" standard is a demanding inquiry).

A plaintiff trying to show a violation of the ADA using circumstantial evidence, as in this case, must satisfy the McDonnell Douglas burden-shifting framework. *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir.2009). To establish a prima facie discrimination under this framework plaintiff must show that: (1) he has a disability, or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability. *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir.2014). If a plaintiff makes that showing, a presumption of

discrimination arises, and the burden shifts to the employer to "articulate a legitimate non-discriminatory reason for the adverse employment action." *Chevron Phillips Chem. Co., LP*, 570 F.3d at 615. At that point, the burden shifts back to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual. *See id; Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016).

A. There is a genuine dispute as to whether Mr. Gunderson's impairment is transitory and minor

Plaintiff alleges that Mr. Gunderson was "regarded as" having a disability as defined in 42 U.S.C. §12012(1)(C), and 42 U.S.C. § 12102(3) states that:

> (B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

Defendant asserts that Mr. Gunderson's impairment was transitory and minor because it lasted only two months, and therefore he cannot have been "regarded as" having a disability. Rec. Doc. 49-1 at 8. Defendant notes that Mr. Gunderson began outpatient counseling when his wife left in March 2013, requested employee assistance in April 2013, and was cleared to return to work by May 20, 2013. Id. at 8. Mr. Gunderson did not continue seeing a therapist after he returned to work in May 2013, and therefore

defendant asserts that the impairment lasted, at most, two months. Id. On the other hand, plaintiff asserts that defendant must demonstrate that Mr. Gunderson's impairment was objectively transitory and minor yet provided no evidence to make this showing. Rec. Doc. 55 at 14. Plaintiff states that although situational depression can be transitory because it can be a short-term condition that generally lasts six months or less, it can also be a recurrent or continuous condition lasting longer than six months. Rec. Doc. 55 at 17-18. Nurse practitioner Ann Ledet, who gave Mr. Gunderson the "situational depression" diagnosis, known in the DSM-5 as adjustment disorder, stated in her deposition that situational depression can continue for six months or stop before then, depending on the triggering event. Rec. Doc. 55-2 at 9-10. Plaintiff also states that DSM-5 classifies adjustment disorder as a "stress-related, short-term nonpsychotic disturbance . . . [that] can last from three to six months. The condition may persist longer when the stressor condition itself is prolonged." Rec. Doc. 55 at 6, n.3. Defendant responds that plaintiff is only speculating that the impairment could last longer than six months but does not provide evidence that it lasted longer than six months in Mr. Gunderson's case. Rec. Doc. 61 at 3. However, the statute states that a transitory impairment is one with an "actual *or expected* duration of 6 months or less." 42 U.S.C. § 12102(3)(B).

Therefore, while it is true that the actual duration of Mr. Gunderson's impairment was not six months at the time of his discharge, we find based on the DSM-5 description of adjustment disorder, cited in plaintiff's response, the determining factor as to whether the condition would be expected to last longer than six months is the stressor condition that caused it. Rec. Doc. 55 at 6, n.3. The adjustment disorder could be expected to last longer than six months if the stressor condition is prolonged. Nurse Ledet's notes do not identify what the stressor condition for Mr. Gunderson's adjustment disorder is – the fact of his wife leaving in March 2013, or the separation from his wife itself. While the former may mean that the impairment is not expected to last longer than six months because it is a discrete incident, there is support that the latter is a prolonged stressor condition with a longer duration. This is a material factual dispute that could determine whether plaintiff can establish that Mr. Gunderson was regarded as having a disability under 42 U.S.C. § 12012(1)(C) and therefore cannot be resolved at the summary judgment stage.

B. There is a genuine dispute as to whether plaintiff has made a prima facie showing of discrimination

Because there is a genuine dispute as to whether the alleged impairment is transitory and minor, the Court will proceed with the burden-shifting analysis described above. There is a genuine dispute as to whether plaintiff can establish all the necessary

elements to make a prima facie case of discrimination. To make a prima facie case of discrimination plaintiff must show that Mr. Gunderson: 1) has a disability or was regarded as disabled; (2) was qualified for the job; and (3) was subject to an adverse employment decision on account of his disability. *See EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir.2014). Plaintiff's complaint alleges Mr. Gunderson was "regarded as" having a physical or mental impairment, so it is not necessary to consider defendant's arguments that Mr. Gunderson did not have an "actual" disability, or "record of" a disability. Rec. Doc. 49-1 at 4. It is also not necessary for this Court to consider whether Mr. Gunderson's alleged disability limited, or was perceived to limit, a major life activity. The ADAAA states that:

> (A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment ***whether or not the impairment limits or is perceived to limit a major life activity.***

42 U.S.C. §12102(3). Therefore, defendant regarded Mr. Gunderson as having a disability if he was discharged because of an actual or perceived physical or mental impairment. Defendant asserts that Mr. Gunderson was discharged because he allowed his personal problems to interfere with his work upon his return, which led to an overall decline in the quality of his work including failing to

13

perform an engine check. Rec. Doc. 49-1 at 6. Defendant provides
deposition testimony of Captains deBouchel and Bourque, and an
employee discipline report describing these issues that was filed
on June 10, 2013 in support of this argument. Rec. Docs. 49-10,
49-11, 49-12. Plaintiff asserts that Mr. Gunderson was perceived
as disabled because of his situational depression diagnosis. Rec.
Doc. 55 at 15. Plaintiff argues that Mr. Gunderson did not fail to
do his duties, but rather it was his display of emotional behavior
in adjusting to his marital problems that led defendant to perceive
him as unable to work and a safety concern. Id. at 15. Plaintiff
points to the temporal proximity of defendant's action in
discharging Mr. Gunderson within two weeks of his return to work
after seeking counseling as evidence that defendant regarded Mr.
Gunderson as disabled. Id. at 16. The Fifth Circuit has previously
noted that "temporal proximity between protected activity and
alleged retaliation is sometimes enough to establish causation at
the prima facie stage." *Porter v. Houma Terrebonne Hous. Auth. Bd.
of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015). "The protected act
and the adverse employment action must be very close in time to
establish causation by timing alone." *Id.*

However, the Fifth Circuit noted that what constitutes "very
close" varies in each case. "[T]his court has accepted a two-and-
a-half-month gap as sufficiently close in one case, and rejected
nearly the same timeframe in another. We have also accepted gaps

14

of less than two months." *Id.* (citing *Richard v. Cingular Wireless LLC*, 233 Fed.Appx. 334, 338 (5th Cir.2007) (holding that a two-and-a-half month gap is sufficient to allow for an inference of causation to make out a prima facie case); *Amsel v. Tex. Water Dev. Bd.*, 464 Fed.Appx. 395, 401–02 (5th Cir.2012) (holding that a gap of over two months was not enough by itself to show a causal connection); *Richardson v. Prairie Opportunity, Inc.*, 470 Fed.Appx. 282, 286–87 (5th Cir.2012) (holding that a seven-week gap was sufficient for a prima facie showing of causation)). In this case, Mr. Gunderson was cleared to return to work by Nurse Ledet on May 20, 2013 after his EAP referral but did not have any more work assigned to him after June 5, 2013 and was discharged on June 21, 2013. Rec. Doc. 55 at 8–9.

Therefore, given the precedent in this circuit regarding temporal proximity, it appears that the two-week gap between Mr. Gunderson's return from EAP on May 20, 2013 and his last day of work on June 5, 2013 are "very close in time". A reasonable reviewer could then conclude that prima facie evidence of temporal proximity shows Mr. Gunderson was subject to an adverse employment decision because of his perceived impairment and therefore regarded as disabled.

Plaintiff must also show that Mr. Gunderson was qualified for the job to make a prima facie showing of discrimination. To be a qualified employee, plaintiff must be able to show that Mr.

15

Gunderson could either: (1) perform the essential functions of the job in spite of his disability, or (2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of his job. *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 342 (5th Cir. 2019). "A function is 'essential' if it bears 'more than a marginal relationship' to the employee's job." Cannon, 813 F.3d at 592.

Defendant does not explicitly address this prong of the prima facie analysis in its summary judgment motion but concludes generally that Mr. Gunderson could not perform his deckhand duties because the issues in his personal life were impacting his work. Rec. Doc. 49-1 at 6. In its response, plaintiff interprets this to mean that Mr. Gunderson was not qualified to perform the functions of his job due to his situational depression. Rec. Doc. 55 at 19. There is a genuine factual dispute as to whether Mr. Gunderson could perform the essential functions of his job.

Defendant has provided evidence from Mr. Gunderson's supervisors that he could not perform certain job duties because the issues in his personal life were interfering with his work. However, plaintiff has provided evidence that Mr. Gunderson was medically cleared to resume his duties by Nurse Ledet who diagnosed him with situational disorder. Rec. Docs. 49-10, 49-11, 49-12, 55-5 at 38. Mr. Gunderson denies pertinent allegations against him by supervisors. At this stage the Court cannot weigh the parties'

evidence in order to determine whether Mr. Gunderson was able to perform his duties. Therefore, summary judgment is improper at this stage.

While defendant does not explicitly address the direct threat defense in its motion, it did plead it in its answer. Rec. Doc. 24 at 3. An employer is entitled to a direct threat defense if an employee poses a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." *EEOC v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 731 (5th Cir. 2007) (quoting 42 U.S.C. § 12111(3)). Whether an employer has properly determined that a person poses a direct threat depends on "the objective reasonableness of [the employer's] actions." *Bragdon v. Abbott*, 524 U.S. 624, 650 (1998). "The direct threat defense must be 'based on a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence,' and upon an expressly 'individualized assessment of the individual's present ability to safely perform the essential functions of the job[.]' " *Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 86 (2002) (quoting 29 C.F.R. § 1630.2(r)).

Plaintiff argues that defendant did not make an independent assessment or obtain information to make a fact intensive determination but rather simply discharged Mr. Gunderson based on biased and unsubstantiated fears. Rec. Doc. 55 at 21. As discussed above, there is a genuine dispute as to whether Mr. Gunderson could

perform the functions of his job without posing a significant risk to the safety of others. However, plaintiff correctly points out that in order to plead a direct threat defense, the defendant must also show that the risk cannot be eliminated by reasonable accommodation, and in this case defendant has not provided any evidence to show that it considered any reasonable accommodations for Mr. Gunderson. Therefore, defendant has failed to establish the direct threat defense at this stage.

C. Defendant has articulated a legitimate, non-discriminatory reason for Mr. Gunderson's discharge

Once a plaintiff makes a prima facie showing of discrimination, the burden shifts to the defendant to "articulate a legitimate non-discriminatory reason for the adverse employment action." *Chevron Phillips Chem. Co., LP*, 570 F.3d at 615. Defendant asserts that Mr. Gunderson was discharged because of the overall decline in the quality of his work, including failing to perform an engine check. Rec. Doc. 49-1 at 6. Defendant states that the failure to perform an engine check is a safety concern and could be grounds for termination. Id. In support of this reason, defendant provides deposition testimony and emails by Captains deBouchel and Bourque who supervised Mr. Gunderson stating he was not performing his duties as a deckhand, as well as an employee discipline report stating the same. Rec. Docs. 49-10, 49-11, 49-12. Additionally, defendant attaches the deposition of Monty

Guidry, personnel manager, who stated that he relied on the perceptions of the captains in assessing Mr. Gunderson's job performance and the termination was based on safety concerns of the vessel and crew members. Rec. Doc. 49-4. In their deposition testimony, Mr. Guidry and Captain deBouchel state that failing to check the engine room poses a safety risk to the vessel and crew members because, among other things, a fire could occur. Rec. Doc. 49-4 at 2, 49-10 at 6. Conducting engine checks was a part of Mr. Gunderson's role as a deckhand, and failure to do complete his duties, especially a duty that impacts the safety of others on board, would be a legitimate and non-discriminatory reason for his discharge.

The Fifth Circuit has "repeatedly held that a charge of "poor work performance" is adequate when coupled with specific examples." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 231 (5th Cir. 2015). Defendant has met its burden of setting forth a legitimate, but rebuttable, nondiscriminatory reason for Mr. Gunderson's termination at this stage.

D. <u>There is a genuine dispute as to whether defendant's articulated reason for Mr. Gunderson's discharge is pretextual</u>

Once the defendant has articulated a legitimate non-discriminatory reason, the burden shifts back to the plaintiff to produce evidence from which a jury could conclude that the

employer's articulated reason is pretextual. *See id; Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016). Plaintiff must "produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015). "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Caldwell v. KHOU-TV,* 850 F.3d 237, 242 (5th Cir. 2017).

As evidence of its assertion that defendant's reason is pretext plaintiff has shown that the Captains' emails concerning Mr. Gunderson's allegedly poor work performance and the employee disciplinary report were apparently created after Mr. Gunderson was actually terminated on June 5, 2013 but before he received his official termination papers on June 21, 2013. A reasonable interpretation of such evidence could demonstrate that the emails and report are not actually reflective of Mr. Gunderson's actions while he was employed but rather were created afterwards in order to make it appear that there was a non-discriminatory reason for his discharge. Rec. Doc. 55 at 25. In response, defendant argues that the emails and employee discipline report were written by the

Captains, who do not make termination decisions, to management personnel. Rec. Doc. 61 at 2.

Defendant argues that the relevant question is not whether Mr. Gunderson performed his duties or not, but rather whether management personnel, who do not have personal knowledge of Mr. Gunderson's performance, reasonably relied on objective evidence in concluding that Mr. Gunderson was not performing his duties and thereafter terminating him. Id. However, defendant does not provide any facts to contradict plaintiff's assertion that Mr. Gunderson's actual last day of work was June 5, 2013. In fact, the Termination Report and Separation Notice both list June 5, 2013 as Mr. Gunderson's last day of work and his termination date as June 21, 2013. Rec. Doc. 49-14 at 1, Rec. Doc. 55-11 at 1. The documents provided by defendant in support of its reason for discharging Mr. Gunderson are dated after his last day of work – June 5, 2013. Specifically, the email from Captain deBouchel is dated June 11, 2013 and the employee disciplinary report is dated June 10, 2013, Rec. Docs. 49-12 at 1; 49-13 at 1. Therefore, plaintiff has provided sufficient evidence at this stage to demonstrate that there is a factual dispute as to whether defendant's proffered reason for discharging Mr. Gunderson was pretextual.

At this stage the Court is not weighing plaintiff's evidence to determine whether plaintiff has adequately shown that defendant's reason actually is pretextual. However, a reasonable

jury could find that plaintiff has shown that defendant's articulated reason is pretextual and therefore summary judgment is not proper.

E. There is a genuine dispute as to whether the return to work examination defendant requested of Mr. Gunderson was proper

42 U.S.C.§ 12112(d)(4)(A) of the ADA states that:

A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

Defendant asserts that the Coast Guard places significant weight on compliance with safety standards and the return to work examinations are completed in accordance with Coast Guard regulations. Rec. Doc. 49-1 at 9. Defendant states that the examination is narrow in scope, limited to a reasonable inquiry, and limited to the job functions. Id. at 10. Moreover, defendant argues that the deckhand position is a safety sensitive position and therefore it was necessary to ensure that Mr. Gunderson was able to operate on the boat safely. Rec. Doc. 61 at 5. Plaintiff, however, asserts that a blanket requirement that all employees who seek an EAP referral or see a personal physician must obtain a return to work examination is a prohibited medical inquiry. Rec. Doc. 55 at 26. Additionally, plaintiff states that defendant has not presented evidence that the examination was job-related and

consistent with business necessity since Mr. Gunderson was a deckhand who did not need any certification or license to perform his duties. Id. at 26-27.

There is very little precedent in the Fifth Circuit interpreting § 12112(d)(4)(A).[1] The Fifth Circuit most recently considered the provision in *Taylor v. City of Shreveport,* 798 F.3d 276 (5th Cir.2015), but analyzed it in relation to the Rehabilitation Act, which the Court noted is distinct from Title I of the ADA and "as a result, a medical inquiry that violates Title I will not necessarily violate the Rehabilitation Act." *Taylor,* 798 F.3d at 285 (5th Cir.2015). Therefore, with no binding precedent regarding the interpretation of §12112(d)(4)(A) in this Circuit, the Court looks to how other circuits have interpreted the provision.

The Second Circuit has stated that an employer can conduct a medical examination or inquiry to determine whether an employee

---

[1] 42 U.S.C. §12112(d)(4)(A) has only been cited by the Fifth Circuit four times, and the Fifth Circuit has not issued interpretations of the statute in those cases that would offer precedent in this case. *Taylor v. City of Shreveport*, 798 F.3d 276, 284 (5th Cir. 2015) (holding that a plaintiff need nto assert that he or she has a disability to contest an allegedly improper medical inquiry or medical examination); *Bachman v. Donahoe*, 460 F. App'x 383, 384 (5th Cir. 2012) (holding that plaintiff had failed to allege that his employer inquired about any disability of his and therefore his 1210(d)(4)(A) failed); *Fuzy v. S&B Engineers & Constructors, Ltd.*, 332 F.3d 301, 303 (5th Cir. 2003) (affirming the district court's dismissal because plaintiff had not raised a genuine issue of material fact that a weight lifting test was not a job related function as to the pipelifting job for which plaintiff sought employment); *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 564 (5th Cir. 1998) (distinguishing the case from a Tenth Circuit case where the plaintiff alleged a violation of 12112(d)(4)(A) and resolving the case by finding that plaintiff lacked standing to seek prospective relief from future violations of section 12112(d)(2))

can perform job-related duties when "the employer can identify legitimate, non-discriminatory reasons to doubt the employee's capacity to perform his or her duties (such as frequent absences or a known disability that had previously affected the employee's work) . . ." *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 98 (2d Cir. 2003). The Ninth Circuit has held that the business necessity standard "may be met even before an employee's work performance declines if the employer is faced with significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job." *Brownfield v. City of Yakima*, 612 F.3d 1140, 1146 (9th Cir. 2010). Similarly, the Seventh Circuit has held that "an employer [must] provide significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job." *Wright v. Illinois Dep't of Children & Family Servs.*, 798 F.3d 513, 523 (7th Cir. 2015). "That an employee's behavior could be described as "annoying or inefficient [does not] justify an examination; rather, there must be genuine reason to doubt whether that employee can perform job-related functions." *Id.*

Therefore, to determine whether defendant's medical examination of Mr. Gunderson was "job-related and consistent with business necessity" as required by the ADA, the Court will consider whether defendant had a legitimate, non-discriminatory reason

prior to the examination by Nurse Ledet to doubt that Mr. Gunderson could perform his duties.

Plaintiff states that defendant required Mr. Gunderson to get the medical examination solely because he had an EAP referral and there was no evidence that he had failed to perform the essential functions of his job at the time he requested the referral. Rec. Doc. 55 at 27. However, defendant states that it only requested the medical examinations after it was determined that Mr. Gunderson was having trouble focusing due to his marital problems and that he had requested EAP assistance. Rec. Doc. 61 at 4. In his deposition, Captain Bourque stated that he noticed Mr. Gunderson's marital issues causing a decline in his work performance prior to his EAP referral, including a lack of focus, crying, and lack of sleep. Rec. Doc. 55-8 at 6-13. Therefore, there is a genuine factual dispute in the record as to whether defendant had a legitimate reason to doubt Mr. Gunderson's capacity to perform his duties upon his return after his EAP referral. A reasonable person could find Captain Bourque's testimony credible and therefore believe that Mr. Gunderson's behavior prior to his EAP referral gave defendant a genuine reason to doubt Mr. Gunderson's ability to do his job after he returned. While the Court does not weigh evidence or make any credibility determinations at this stage, this existence of a genuine factual dispute precludes summary judgment on this issue.

Therefore, because there are genuine factual disputes as to multiple issues in this case, including whether Mr. Gunderson's impairment is transitory and minor, whether plaintiff can make a prima facie case of discrimination, whether defendant's articulated reason for discharging Mr. Gunderson is pretextual, and whether the medical examination defendant required of Mr. Gunderson was proper, summary judgment is not proper.

New Orleans, Louisiana, this 4th day of April 2019

_____

SENIOR UNITED STATES DISTRICT JUDGE